STATE OF CONNECTICUT *v.* JOSEPH A. COGNATO

REVIEW DIVISION OF THE SUPERIOR COURT

Decided June 22, 1967

*Jerrold H. Barnett,* special public defender, for the defendant.

*Richard P. Sperandeo,* assistant state's attorney, for the state.

BY THE DIVISION. The defendant, nineteen years of age, pleaded guilty to two charges: (1) carrying a pistol without a permit, in violation of § 29-35 of the General Statutes, as amended, for which the penalty prescribed by § 29-37 is a fine of not more than $1000 or imprisonment for not more than five years or both; and (2) escape from jail, in violation of § 53-157, as amended, which prescribes a penalty of imprisonment for not more than five years. Two additional charges of breaking and entering a dwelling in the daytime and assault with intent to commit rape were nolled. The court imposed an effective sentence of not less than two and one-half years and not more than eight years.

On May 28, 1966, at 11 a.m., a Miss O'Connell, who was a girl friend of the defendant, reported to

the Hamden detective bureau that the defendant had telephoned and asked her to meet him at the Hamden Plaza shopping center at 3:30 p.m. on that day. He said he did not want to do her any harm but just wanted to see her for the last time, and that she could bring anyone she wanted with her, excepting her parents and the police. He told her that if the police attempted to arrest him, he would take "some of them with him." One police officer secreted himself in Miss O'Connell's vehicle, and others were stationed at various points in the shopping center in order to apprehend the defendant.

Miss O'Connell drove to the shopping center and the defendant started to walk to her car. The officer with her got out of her car and immediately recognized the defendant. Upon seeing the officer, the defendant ran toward the car in which he had come to the shopping center, which had a single male occupant sitting behind the steering wheel. The police officer called out to the defendant that he was a police officer and for the defendant to stop or he would shoot. The defendant continued to run and a warning shot was fired into the air. As the police officers stationed in the plaza reached the car, the defendant yelled to the driver, "Let's get the hell out of here, get going." The driver started the car moving, and the police officers pushed their guns through the open windows against the heads of both occupants. The driver stopped the car, and both put their hands up. A search of the defendant's person disclosed a .45 United States army Colt automatic, with a fully loaded clip. In his shirt pocket, the police found seven .45 caliber bullets. In a suitcase found in the car, there was a partially empty box of .45 caliber ammunition. The defendant had no license or permit for the gun.

On June 19, 1966, the defendant was in the New Haven state jail awaiting trial. At about 1:50 p.m.

he was in the recreation yard with approximately eighty other inmates. The defendant ran, jumped on a tunnel roof, climbed to the top of the building and jumped to the ground outside the prison, and ran away. He was later apprehended at gunpoint.

The defendant has a bad record both as a juvenile and as an adult. He has been guilty of numerous violations of the law from 1959 to the present time. On September 29, 1961, he was committed to the Connecticut school for boys at approximately 5 p.m. and ran away at 11 p.m. in his pajamas. He was apprehended in a stolen car. On October 4, 1961, he attempted to run away again but was caught on the grounds. On October 5, 1961, he ran away, stealing a car on the grounds of the institution, and drove to New Haven, where he stole another car and committed a burglary. He was returned to the school on October 7, 1961, and ran away the same day, stealing two cars in the process. He was transferred to the Connecticut Valley Hospital on October 11, 1961, and shortly thereafter ran away. He was returned to the hospital and placed in the maximum security section, from which he also escaped. He was found not to be mentally ill. He was transferred to the Connecticut reformatory, where he was in segregation three separate times for serious infractions of the rules. In addition, he has a long list of additional violations, as a result of which he was fined and jailed on many occasions. He was on probation at the time he was arrested for carrying a pistol without a permit.

In view of the defendant's record and repeated violations of the law and the offenses to which he pleaded guilty, it is difficult to see how the court could do anything other than impose a substantial prison sentence. The court's remarks at the time of sentencing state the problem aptly: "Now, the record is atrocious. He has been preoccupied with

guns since a very early age. He has a long juvenile record and was sent to the Meriden school for boys for breaking and entering and theft and abusing a girl. Then the reformatory, where he had three serious infractions of the rules. So the reformatory is no place for him now. It has gone beyond that point. Then all these escapes, three times from the Meriden school for boys, once from Connecticut Valley Hospital, once from St. Raphael's Hospital, and now this other escape from jail indicates we must put him where maximum security will control him. I do this with sadness because something is not quite right with this boy, obviously . . . ."

The sentence is fair and just and should stand.

PALMER, HEALEY and BARBER, Js., participated in this decision.